# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **ANARKALI ENTERPRISES, INC.,** | § § § | |
| **Appellant/Cross Appellee,** | § § | |
| **v.** | § § | **Civil Action No. 4:18-cv-00796-P** |
| **BP CHANEY, LLC,** | § § § | |
| **Appellee/Cross Appellant.** | § § | |

## MEMORANDUM OPINION AND ORDER

This is an appeal and cross appeal from an adversary proceeding, originally brought in a Chapter 11 bankruptcy case.[1] *See BP Chaney, LLC v. Anarkali Enterprises, Inc.*, Adv. No. 17-04062-mxm (Bankr. N.D. Tex.).[2] Before the Court is Appellant/Cross Appellee Anarkali Enterprises, Inc.'s ("Anarkali") Brief (ECF No. 5), Appellee/Cross Appellant BP Chaney, LLC's Brief (ECF No. 19), Anarkali's Reply (ECF No. 24), and the Chapter 7 Trustee John Dee Spicer's Reply Brief (ECF No. 30).

Having considered the briefing and applicable law and having reviewed the bankruptcy record, the Court concludes that the bankruptcy court did not abuse its discretion by denying BP Chaney leave to amend its pleadings and plead the discovery rule. However, because the discovery rule need not be specifically pleaded to be raised in

---

[1]The case was ultimately converted to a Chapter 7 case. BK ECF No. 71.

[2]All references to the record will be "BK ECF No. __," which refers to the adversary proceeding (Adv. No. 17-04062-mxm). All references to the docket entries on this appeal will be "ECF No. __."

federal court and because BP Chaney pleaded facts that were sufficient to notify Anarkali that it may assert the discovery rule, the bankruptcy court erred by not permitting BP Chaney to assert the discovery rule in response to Anarkali's limitations defense. The bankruptcy court also erred by concluding as a matter of law that the Contract for Deed superseded the Sale Contract and that the Sale Contract was invalid and not enforceable. Therefore, the Court **AFFIRMS in part**, **REVERSES in part,** and **REMANDS** this case for further consistent proceedings.

## I.    JURISDICTION

"A federal district court has jurisdiction to hear appeals—and an aggrieved litigant may appeal as of right—from the 'final judgments, orders, and decrees' of a bankruptcy court." *Phillips v. Travelers Cas. & Sur. Co. of Am.*, ADV 10-03075, 2012 WL 3779294, at *1 (S.D. Tex. Aug. 30, 2012) (quoting 28 U.S.C. § 158(a)(1)).  Pursuant to 28 U.S.C. § 1134(b), the Court has jurisdiction over the underlying adversary proceeding because it arose in a case brought under Title 11.[3]

## II.   BACKGROUND

### A.    Factual Background

Since 2001, Anarkali has owned certain commercial property ("Property"), commonly referred to as 1050 Forest Park Boulevard, Fort Worth, Texas.  BK EF No. 142

---

[3]In its Reply Brief, Anarkali asserted that BP Chaney lacked standing to pursue the instant appeal and sought dismissal.  Anarkali's theory was that only the Chapter 7 Trustee had standing to appeal.  *See* Anarkali Reply Br. at 5, ECF No. 24.  However, because the Chapter 7 Trustee subsequently intervened and adopted BP Chaney's issues and arguments raised in its appellate brief (ECF No. 30), Anarkali's request for dismissal for lack of standing is **DENIED as moot**.

at 4, ECF No. 2-9 at 303. The Property consists of approximately .25 acres of real estate and a three-story office building. BP Chaney's Br. at 5. In 2006, Anarkali signed a promissory note, security agreement, and deed of trust in favor of Woodforest National Bank in the amount of $2,400,000. BK ECF No. 111-3 at 128. As security, Anarkali granted Woodforest a lien on the Property. BK ECF No. 114 at 3.

In June 2008, Misty Brady (formerly Misty Brady Chaney, referred to herein as "Brady"), contacted Anarkali about leasing space at the Property, and on June 15, 2008, Brady purportedly signed a lease agreement with Anarkali. *See* BK ECF No. 93 at 9. In written testimony however, Brady denied that her company, BP Chaney, had ever "consummated" the lease, made payments under the lease, or that she had ever seen the lease. BK ECF No. 103-3 at 32.

In July 2008, Brady began negotiating with Barkat Ali, a principal of Anarkali, regarding the sale of the Property. *Id.* According to Brady, on August 26, 2008, she entered into a contract of sale with Anarkali on behalf of Chaney Enterprises, LLC—an entity that she testified had been created for the sole purpose of taking title to the Property. BK ECF No. 103-3 at 29.[4] But according to Brady's written testimony, Chaney Enterprises, LLC was never formed: "[I]nstead I created BP Chaney, LLC. That is the reason that the Sale

---

[4]On appeal, BP Chaney asserts that Barkat represented that the sale would be a "wraparound transaction," ostensibly to account for the Woodforest lien. BP Chaney Br. at 7 n.1.

Contract with Anarkali dated August 26, 2008 lists the Buyer as Chaney Enterprises, LLC." *Id.*[5]

The contract entitled, "Commercial Contract – Improved Property" (herein "Sale Contract" or "Initial Sale Contract"), provided that Chaney Enterprises, LLC would purchase the Property for $1,100,000 from Anarkali. BK ECF No. 93 at 161–62. The portion of the Sale Contract entitled "Financing," had the box checked for "Seller Financing" and provided that Chaney Enterprises, LLC would deliver a $1,080,000 promissory note and deed of trust in accordance with an attached Commercial Contract Financing Addendum. *Id.* at 162. The Financing Addendum further specified that the promissory note would be for a term of 300 months, beginning at October 1, 2008, and bearing an interest rate of "Prime + 3%." *Id.* at 175. Finally, the Financing Addendum provided that the promissory note would include both personal and corporate liability against the maker in the even of default. *Id.*

According to Anarkali, the Sale Contract did not obligate Anarkali to transfer title unless and until Chaney Enterprises obtained financing. *Id.* at 6. Indeed, the Sale Contract had the portion reciting that the seller would deliver a deed or instrument conveying title struck through and it appeared to be initialed by Brady and Barkat. *Id.* at 167. In an e-mail chain on September 22 and 23, 2008, in which the closing attorney sent Brady and Barkat closing documents for their review, Barkat informed the closing attorney that "the

---

[5]In its Appellant's Brief, BP Chaney stated that the reason for the name change was because Brady "learned that the name 'Chaney Enterprises, LLC' could not be used due to its similarity with another existing entity." BP Chaney's Br. at 8.

language is missing that, Misty Chaney will arrange her financing within 6 months to 2 years from the date of this agreement, unless she cannot than [*sic*] Anarkali will continue for 25 years payments [*sic*] plan." *Id.* at 142. The closing attorney responded that she would "put some language into the contract for deed about that," but then she warned to "keep in mind though that that portion of your agreement has no legal teeth—meaning the way that you guys made that agreement is not truly legally enforceable under the law." *Id.* at 141. In a different November 4, 2008 e-mail exchange between Brady and an escrow officer apparently involved in preparing some aspects the closing documents, the escrow officer sent proposed changes from Barkat's son (who is an attorney). Brady responded as follows: "I do not want to make any of these changes. We already have an agreement in place, and have been honoring that original agreement since September. I just want to leave everything as is with the agreement that Barkat and I have already made." BK ECF No. 111-4 at 120.

On November 18, 2008, Chaney Enterprises, BP Chaney, and Anarkali executed a "Release of Earnest Money" contract. BK ECF No. 103 at 39. The Release of Earnest Money contract provides that the parties were being released from all liability under "the contract." It is not clear what "the contract" is in reference to. *See id.*

According to Anarkali's principal, Anarkali and BP Chaney then decided to enter into a contract for deed. BK ECF No. 93 at 6–7. BP Chaney disagrees. According to Brady, she believed that on November 18, 2008, which she considered the closing, she executed, inter alia, a Note, Security Agreement, and Acknowledgment of Sale, all of

which had nothing to do with a contract for deed and instead consummated the sale of the Property. BK ECF No. 103-3 at 30.

Then on December 30, 2008, BP Chaney and Anarkali executed a Contract for Deed. BK ECF 93 at 7. The Contract for Deed obligated BP Chaney to, inter alia, make a down payment of $20,000, pay the principal balance of $1,080,000 plus interest in monthly installments over a 25-year term. *Id.* at 117. Brady provided affidavit testimony that Anarkali had informed her that the Contract for Deed was merely a closing document that had been overlooked at the November 18, 2008 closing. BK ECF No. 103-3 at 30. She expressly testified that "explicit representation was made [by Anarkali] that nothing was changing regarding the sale transaction that had already occurred." *Id.*[6]

Subsequently, there arose several disputes concerning insurance proceeds, BP Chaney's September and October 2015 payments, and Anarkali's refusal to provide an escrow accounting upon request from BP Chaney. BK ECF No. 103-3 at 3–16. BP Chaney made a partial payment to Anarkali in January 2017, but BP Chaney has not made a payment since. BK ECF No. 93 at 37.[7]

---

[6]The Trustee argues that because the terms of the Contract for Deed and the Sale Contract were so similar—for example, the monthly payments under the Sale Contract were $8,104.00 for 300 months while the monthly payments under the Contract for Deed were $8,104.11 for 300 months—the parties' subsequent performance cannot be definitively attributed to the Contract for Deed. Trustee's Reply Br. at 14.

[7]In March 2016, Anarkali had begun discussing refinancing the Woodforest Loan with Vista Bank, and on April 18, 2016, Anarkali entered into a loan agreement, promissory note, deed of trust, security agreement, and financing statement with Vista Bank in the amount of $2,900,000 ("Vista Bank Loan"). BK ECF No. 93 at 36. Approximately $1,500,000 of the Vista Bank Loan was used to pay off the Woodforest Loan. *Id.* Thus, Anarkali then owed Vista Bank the balance of the loan—approximately $1,400,000—which was secured by a lien on, inter alia, the Property that Anarkali had granted Vista Bank. *Id.*; BK ECF No. 103-3 at 30. Although not necessary to

6

### B. Procedural History in Underlying Bankruptcy Case

On July 3, 2017, BP Chaney filed the underlying voluntary petition for Chapter 11 bankruptcy. *In re BP Chaney, LLC*, No. 17-42793 (Bankr. N.D. Tex.). Several days later, BP Chaney filed the underlying adversary proceeding against Anarkali and Vista Bank ("Defendants"). *See* BK ECF No. 1. BP Chaney asserted claims for breach of contract for deed, conversion, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and fraudulent transfer and sought a declaratory judgment. *See id.* Nowhere in BP Chaney's Original Complaint was there any allegation that the Contract for Deed was not binding and enforceable. *See id.*

On August 9, 2017, Defendants filed separate answers and counterclaims. BK ECF Nos. 7 & 8. Anarkali brought a breach-of-contract counterclaim and sought a declaratory judgment. BK ECF No. 7. Although Anarkali raised a host of affirmative defenses, it did not raise limitations. *See* BK ECF No. 7 at 7–8. Anarkali eventually filed a Motion for Leave to file an Amended Answer, which the Court granted on January 1, 2018. BK ECF Nos. 25 & 46. In Anarkali's First Amended Answer and First Amended Counterclaim, it asserted that BP Chaney's claims "are barred in whole or in part by the statute of limitations[.]" BK ECF No. 25-1 at 8.

On October 31, 2017, BP Chaney filed a Motion for Leave to file an Amended Complaint, in which BP Chaney attached its proposed First Amended Complaint to its Motion for Leave. BK ECF No. 24. The proposed First Amended Complaint that was

---

the resolution of this appeal, for the sake of completion the Court notes that a key dispute before the bankruptcy court was whether the Vista Bank lien violated the Contract for Deed.

attached to BP Chaney's Motion for Leave sought to clarify certain allegations, but it did not add any parties or challenge the enforceability of the Contract for Deed. *See* BK ECF No. 24-1. Although the Court granted the Motion for Leave (BK ECF No. 36), it is not clear from the record whether the bankruptcy clerk filed the Amended Complaint as a separate docket entry.

On January 18, 2018, BP Chaney filed a First Amended Complaint. *See* BK ECF No. 60. However, the actually-filed First Amended Complaint contained different allegations than the proposed First Amended Complaint that had been attached to the Motion for Leave. *Compare* BK ECF No. 60 *with* BK ECF No. 24-1. Namely, the actually-filed First Amended Complaint sought to challenge the enforceability of the Contract for Deed and alleged that the Contract for Deed had been represented as an "additional closing document," and included new claims for fraud and breach of contract, as well as additional declaratory judgment requests. *See* BK ECF No. 60 at 7, 10, 12–14.

On January 23, 2018, the parties appeared for a hearing (MSJ Hearing) on several pending matters, including Anarkali's Motion for Summary Judgment. MSJ Hearing, BK ECF No. 175. At the MSJ Hearing, the issue of the actual-filed First Amended Complaint came up, and BP Chaney's counsel acknowledged that despite obtaining leave of court to file the proposed First Amended Complaint that was attached to BP Chaney's Motion for Leave, BP Chaney had in fact filed a different First Amended Complaint:

> THE COURT: So, I hear -- so I think what I hear you saying is that you admit that you probably should have filed a motion for leave to file what you actually filed. I mean, because [the actual-filed First Amended Complaint] was well beyond what the Court authorized the first time.

> [BP CHANEY'S TRIAL COUNSEL]: I would not contest that. I would -- I did look at the order, you know, to make sure that it wasn't any sort of, you know, it wasn't prohibited, but it -- but I certainly admit that it was not what was attached to the motion for leave. And I would, to the extent that the Court views that as incorrect and is inclined to strike it, we would certainly ask that the Court at least consider what's there and allow us to refile or file a complete new motion for leave to file an amended complaint.

MSJ Hearing at 10. Although there was some confusion whether the bankruptcy court would strike the actually-filed First Amended Complaint, the bankruptcy court did not and eventually clarified that the "actual live complaint is the *Plaintiff's First Amended Complaint* filed at ECF No. 60." ECF No. 1-1 at 11.

On January 31, 2018, BP Chaney filed another motion for leave to file a Second Amended Complaint to add Defendants. *See* BK ECF No. 74. On February 8, 2018, the bankruptcy court entered an order denying BP Chaney's motion for leave. *See* BK ECF No. 84. On March 24, 2018, BP Chaney filed a third motion for leave to amended complaint for the limited purpose of asserting the discovery rule. *See* BK ECF No. 108. On May 15, 2018, the bankruptcy court entered an order denying the motion. *See* BK ECF No. 115.

Anarkali eventually filed an Amended Motion for Summary Judgment. *See* BK ECF No. 89. The bankruptcy court granted the Amended MSJ as to all of BP Chaney's claims and Anarkali's request for declaratory judgment. BK ECF No. 114 at 37. The bankruptcy court then entered an order clarifying its summary-judgment order, in which the bankruptcy court granted Anarkali's declaratory judgment counterclaim. *See* BK ECF No. 132. On August 7, 2018, the parties proceeded to trial solely on the amount of Anarkali's claims against BP Chaney and they agreed that rather than present live

testimony, they would submit post-trial motions with exhibits regarding fees and costs. BK ECF No. 154 at 3. After filing said post-trial motions, the bankruptcy court issued its Final Order (BK ECF No. 154) and Final Judgment (BK ECF No. 155). The Final Judgment was "for [BP Chaney] in part, and for Defendants, in part." BK ECF No. 155 at 2. Thus pursuant to the Final Order and Final Judgment, BP Chaney took nothing on all its claims, and Anarkali was awarded $931,998.68 for its counterclaim. BK ECF No. 154 at 22. Neither party was awarded costs or attorney's fees. *Id.*

## III. ISSUES ON APPEAL

BP Chaney appeals from the Final Judgment (BK ECF No. 155), Final Order (BK ECF No. 154), Order Granting Anarkali Enterprises' Motion for Clarification ("Clarification Order") (BK ECF No. 132), Order Granting Motions for Summary Judgment (BK ECF No. 114), and Order denying BP Chaney's Motion for Leave to File Second Amended Complaint to add Defendants (BK ECF No. 84). BP Chaney raises twelve issues on cross appeal (BP Chaney Br. at 3–4), which are as follows:

1. Did the bankruptcy court err by denying BP Chaney's Motion for Leave to Amend?

2. Did the bankruptcy court err by concluding that the Sale Contract was unenforceable and that the Contract for Deed was the controlling document regarding the sale of the Property?

3. Did the bankruptcy court err by granting summary judgment on BP Chaney's fraud claim?

4. Did the bankruptcy court err by granting summary judgment on BP Chaney's breach-of-contract claim?

5. Did the bankruptcy court err by concluding that BP Chaney suffered no damages as a result of Anarkali's breach of the Contract for Deed?

6. Did the bankruptcy court err by concluding that BP Chaney had no equity in the Property?

7. Did the bankruptcy court err by concluding that Vista Bank has a valid and enforceable lien against the Property?

8. Did the bankruptcy court err by concluding that BP Chaney's claims were barred by limitations?

9. Did the bankruptcy court err by concluding that the Contract for Deed and Note were entered in to contemporaneously and thus part of a single transaction?

10. Did the bankruptcy court err by finding that Anarkali provided written notice of default under the Contract for Deed?

11. Did the bankruptcy court err by finding that BP Chaney failed to establish damages as a result of Anarkali's failure to establish an escrow account?

12. Did the bankruptcy court err by concluding BP Chaney was not entitled to attorney's fees under Section 38.001 of the Texas Practice and Remedies Code?[8]

Anarkali presents five issues on appeal (Anarkali's Br. at vii). Because all issues relate to whether the bankruptcy court erred by denying Anarkali recovery of its attorney's fees and costs, should the Court need to, it will consider and resolve all five issues collectively.

---

[8]Because BP Chaney does not challenge dismissal of its fraudulent transfer claim and tortious interference claim, the Court affirms the bankruptcy court's dismissal of those claims.

## IV.   ANALYSIS

Because the resolution of BP Chaney's cross appeal affects the resolution of Anarkali's issues on appeal, the Court first addresses BP Chaney's cross appeal.

### A.   Denial of BP Chaney's Motion for Leave to Amend Not an Abuse of Discretion

BP Chaney challenges the bankruptcy court's order denying BP Chaney's Motion for Leave to Amend to assert the discovery rule. BP Chaney Br. at 23. BP Chaney contends that the bankruptcy court abused its discretion because there was not a substantial reason to deny leave as there was no undue delay or futility of the amendment. *Id.* at 24–27. The Court disagrees.

#### *1.   Standard of Review*

A district court reviews a bankruptcy court's decision to deny a motion for leave to amend a pleading for an abuse of discretion. *See Matter of Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996). Federal Rule of Civil Procedure 15(a) provides that courts "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Indeed, Rule 15 "evinces a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Thus, the denial of a motion for leave to amend should be the exception and not the rule. *Cf. N. Cypress Med. Center Op. Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) ("Under the liberal pleading presumption, discretion may be misleading because Rule 15(a) evinces a bias in favor of granting leave to amend.").

But leave to amend is not automatic. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). Thus, while the decision to grant leave is within the discretion of the bankruptcy court, its discretion is not broad enough to permit denial if the court lacks a substantial reason to do so. *See id.* When deciding whether to grant such leave, the court may consider such factors as: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *Wimm*, 3 F.3d at 139. If the bankruptcy court denies a party's request for leave to amend, it needs a "substantial reason." *N. Cypress Med. Ctr. Operating Co.*, 898 F.3d at 477 (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 755 F.3d 368, 378 (5th Cir. 2014)).

2. *Analysis*

In its order denying BP Chaney's Motion for Leave, the bankruptcy court stated that it "agrees with the arguments and authorities in [Anarkali's and Vista Bank's] Response" and that it was denying leave to amend "[b]ecause [BP Chaney] provide[d] no justification for its delay and any amendment would be futile ([BP Chaney] cannot plead facts sufficient to support the discovery rule) . . . ." *See* BK ECF No. 115.

As an initial matter, there was no abuse of discretion for denying BP Chaney's Motion for Leave to Amend for the Limited Purpose of Asserting the Discovery Rule because no such amendment was required. The Fifth Circuit has held that notwithstanding Texas state procedure requiring that the discovery rule be pleaded, federal law governs the pleading requirements in a federal court case, and "[t]he discovery rule need not be

specifically pleaded in federal court." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008). Rather, "it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based." *Id.*; *see Oleson v. Stryker Sales Corp.*, No. 3:11-CV-0909-B, 2011 WL 13238382, at *1 (N.D. Tex. Dec. 30, 2011) ("The Fifth Circuit, however, has made clear that the discovery rule need not be pleaded with particular, precise details. Rather, the plaintiff need only plead sufficient facts to put the defense on notice of the theories on which the complaint is based.") (internal quotation marks omitted).[9]

By permitting BP Chaney to file its actually-filed First Amended Complaint (BK ECF No. 60), BP Chaney pleaded facts that were sufficient to notify Anarkali that BP Chaney might assert the discovery rule. That is, BP Chaney alleged that Anarkali had misrepresented the nature of the Contract for Deed as "merely an additional closing document" (BK ECF No. 60 at 7) and that Anarkali had made false representations to induce BP Chaney into signing the Contract for Deed (*Id.* at 12). Given the allegations that Anarkali's misrepresentations at the signing of the Contract for Deed had concealed the true nature of the instrument, BP Chaney pleaded facts that permitted it to at least raise the discovery rule in response to Anarkali's limitations defense to BP Chaney's contract claim.

---

[9]The bankruptcy court cited a case from this Court, which asserted that the discovery rule must be pleaded or it can be waived. *See Yumilicious Franchise, LLC v. Barrie*, No. 3:13-CV-4841-L, 2015 WL 1822877, at *2 (N.D. Tex. April 22, 2015) (Lindsay, J.) (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988)). While the Court acknowledges this case, the Court declines to follow it because it relied exclusively on Texas Supreme Court cases to support its conclusion. As stated above, the Fifth Circuit has instructed that with respect to the discovery rule, courts should look to federal pleading requirements. *TIG Ins. Co.*, 521 F.3d at 357.

Accordingly, the bankruptcy court did not err by denying BP Chaney's request for leave to amend and plead the discovery rule.

But not only was the amendment unnecessary, it was futile with respect to BP Chaney's newly-added fraud claim. In the context of a motion for leave to amend, an amended complaint would be futile if it could not survive a 12(b)(6) motion to dismiss. *Marucci*, 751 F.3d at 378. The allegedly fraudulent activities by Anarkali were oral representations by Anarkali's principal to BP Chaney's principal. But those representations notwithstanding, any question as to the nature of the transaction was memorialized in the written Contract for Deed. BP Chaney did not allege that it did not receive a copy of the executed Contract for Deed or any other facts that would permit it to rely on Anarkali's oral representations rather than the written Contract for Deed that BP Chaney signed. Therefore, BP Chaney as a party signing the Contract for Deed "is presumed to have consented to its terms and is charged with knowledge of the agreement's legal effect; in those circumstances, a party's failure to read an instrument before signing it is not a ground for avoiding it." *Priester v. Long Beach Mortg. Co.*, No. 4:16-CV-449, 2018 WL 4469679, at *5 (E.D. Tex. Sept. 18, 2018) (quoting *Sosa v. Long Beach Mortg. Co.*, No. 03-06-00326-CV, 2007 WL 1711788, at *3 (Tex. App.—Austin 2007, no pet.)).

Further, the Fifth Circuit has recently explained that fraud requires justifiable reliance and that reliance is not shown if based on the "plaintiff's individual characteristics, abilities, and appreciation of the facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance on the plaintiff's part." *N. Cypress Med. Ctr. Operating Co.*, 898 F.3d at 474 (quoting *Grant Thornton LLP v.*

*Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)). A person "may not justifiably rely on a representation if there are red flags indicating such reliance is unwarranted." *Id.* And while justifiable reliance usually presents a question of fact, it can be negated as a matter of law when the circumstances prevent reliance from being justified. *Id.*

Here, the record contains an e-mail chain that included Brady, Anarkali's principal, and the closing attorney. BK ECF No. 93 at 141–142. In a message that Brady was copied on, Anarkali's principal reviewed the closing documents prepared by the attorney and noted that "the language is missing that, Misty Chaney will arrange her financing within 6 months to 2 years from the date of this agreement, unless she cannot than Anarkali will continue for 25 years payments plan." *Id.* at 142. In the closing attorney's response, she copied Brady and stated that she would put "some language into the contract for deed about that" but also warned to "keep in mind though that that portion of your agreement has no legal teeth—meaning the way that you guys made that agreement is not truly legally enforceable under the law." *Id.* at 141. This statement that the closing attorney was drafting a contract for deed and that the parties' agreement had "no legal teeth" were red flags, making BP Chaney's reliance on Anarkali's representations not justifiable. *See N. Cypress Med. Ctr. Operating Co.*, 898 F.3d at 475.

Accordingly, the bankruptcy court did not abuse its discretion by denying leave to amend and plead the discovery rule because it would have been futile.

Finally, BP Chaney did cause undue delay *by filing a different First Amended Complaint* than the one that had been attached to its Motion for Leave. As quoted above,

BP Chaney's counsel acknowledged that by filing a different First Amended Complaint than the one attached to the motion for leave, the bankruptcy court could strike it and BP Chaney would have to file an additional motion for leave. *See Wimm*, 3 F.3d at 142 (holding parties' failure to assert claims sooner, even though they were aware of the underlying facts at the outset of the lawsuit, supports the district court's finding of bad faith and dilatory motive and denial of motion for leave to amend).

Therefore, based on the foregoing, the Court **OVERRULES** BP Chaney's first issue.

## B.     Enforceability of the Contract for Sale and whether the Contract for Deed Controls

The next issue the Court addresses is the bankruptcy court's conclusion that the Sale Contract was unenforceable as a matter of law and that the Contract for Deed was controlling.  As the Trustee notes in his brief, perhaps the central issue in this dispute is which written agreement controls—the Sale Contract or Contract for Deed.  Trustee's Reply Br. at 9.  Based on the Court's review of the record, the Court agrees with BP Chaney and the Trustee that the bankruptcy court's findings that the Contract for Deed is controlling and the Sale Contract unenforceable are clearly erroneous.

### *1.     Standard of Review*

When a district court reviews a bankruptcy court's decision, it functions as an appellate court and utilizes the same standard of review generally applied by a federal court of appeals. *See In re Webb*, 954 F.2d 1102, 1104 (5th Cir. 1992).  The Court reviews conclusions of law de novo. *In re Coutee*, 984 F.2d 138, 140 (5th Cir. 1993); *In re Young*,

995 F.2d 547, 548 (5th Cir. 1993). The district court reviews findings of fact under a clearly erroneous standard. *Young*, 995 F.2d at 548. Under this standard, the Court will reverse findings of fact only if based on the entire evidence, the Court is left "with the definite and firm conviction that a mistake has been made." *Id.*

### 2. *Summary Judgment Pursuant to Rule 56*

"Under the Bankruptcy Code, the standard for granting summary judgment is the same as Federal Rule of Civil Procedure 56." *In re T.S.C. Seiber Services, L.C.*, 771 F.3d 246, 249–50 (5th Cir. 2014) (citing FED. R. BANKR. P. 7056). Summary judgment under Rule 56 is appropriate if the evidence in the record demonstrates that there are no genuine issues of material fact. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986); *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). Where the movant bears the burden of proof at trial on the issue at hand, it "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); *see also Addicks Servs., Inc. v. GGP–Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

At the summary judgment stage, the court may make no credibility determinations or weigh any evidence. *See Coffin v. Blessey Marine Servs., Inc.,* 771 F.3d 276, 279 (5th Cir. 2014). Additionally, the Court must construe all the evidence in the light most

favorable to the non-movant and must draw all reasonable inferences in favor of the non-movant. *See Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013); *In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 (5th Cir. 2000).

　　　3.　　*Analysis*

The Court first reviews the bankruptcy court's conclusion that BP Chaney could not enforce the Sale Contract because it was not a party to it. As acknowledged by all parties, Chaney Enterprises, LLC and not BP Chaney was a party to the Sale Contract. But that may not be fatal to BP Chaney being able to enforce the Sale Contract because Chaney's declaration testimony provided that Chaney Enterprises, LLC was never formed and Chaney instead created BP Chaney, LLC. BK ECF No. 61-1 at 8–9.

Texas law provides that "where a promoter executes a contract on behalf of a proposed corporation, the contract is enforceable against the corporation if the corporation subsequently comes into existence and ratifies or otherwise accepts the benefits of the contract." *Maurice Pierce & Assocs., Inc. v. Computerage, Inc.*, 608 F. Supp. 173, 177 (N.D. Tex. 1985). And because a party cannot act as an agent for a nonexistent corporation, he can instead only act as a promoter. *See Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1998, writ denied). When a promoter acts for a nonexistent corporation, a third party may ratify a contract if the ratifying party is in possession of all material facts and acts with such knowledge. *Id.*; *Star Corp. v. Gen. Screw Products Co.*, 501 S.W.2d 374, 380 (Tex. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

Here, Brady entered into the Sale Contract as Chaney Enterprises, LLC, but that entity was never formed. Therefore, by signing the Sale Contract, Brady was acting as a

19

promoter. She then executed all subsequent documents at the November 18, 2008 closing as well as the Contract for Deed on behalf of BP Chaney. There is no dispute that for several years after the Sale Contract and Contract for Deed were executed, BP Chaney and Anarakali performed or partially performed. If the Sale Contract controls, then it may have been ratified by BP Chaney. The bankruptcy court recognized that "the Contract for Deed contained essentially the same material terms as the Initial Sale Contract . . . ." BK ECF No. 114 at 18. Thus, because the terms of the Sale Contract and the Contract for Deed were so similar and because Brady's declaration testimony asserted that she believed she was performing under the Sale Contract, it was improper for the bankruptcy court to resolve at summary judgment whether BP Chaney ratified the Sale Contract or whether BP Chaney simply performed under the Contract for Deed.

In a footnote in the bankruptcy court's Order Granting Motions for Summary Judgment, the bankruptcy court acknowledges that on November 18, 2008, the parties executed the Release of Earnest Money contract that released the parties from all liability under "the contract," and "[i]t is not clear to what document or agreement 'the contract' refers." BK ECF No. 114 at 4, n.21. However, the bankruptcy court made a finding and conclusion "that the factual dispute as to the identity of 'the contract' is not material." *Id.*

The Court agrees with the bankruptcy court that it is not clear to what "the contract" refers, but the Court disagrees that the factual dispute is not material. If BP Chaney is correct that the Release of Earnest Money contract refers to some contract other than the Sale Contract, then the Sale Contract could be an enforceable agreement. And, as explained above, because BP Chaney and Anarkali may have ratified the Sale Contract, BP

20

Chaney could enforce the Sale Contract against Anarkali if the trier of fact determines that the Sale Contract was ratified.

The bankruptcy court also concluded that the merger doctrine bars enforcement of the Sale Contract. But as explained above, because Chaney Enterprises, LLC was never formed, because BP Chaney and Anarkali may have ratified the Sale Contract, and because the Contract for Deed may be unenforceable, it is premature to determine whether the merger doctrine would apply, making the Contract for Deed supersede the Sale Contract.

Therefore, the Court concludes that the bankruptcy court erred by concluding that the Sale Contract was invalid and unenforceable, that the Contract for Deed was the controlling document, that the factual dispute as to the identity of "the contract" in the Release of Earnest Money contract was not material, and that the merger doctrine bars enforcement of the Sale Contract. Accordingly, the Court **SUSTAINS** BP Chaney's second issue. Because BP Chaney's Issues 4, 5, 6, 7, 10, 11, and 12 are contingent on how the trier of fact resolves the enforceability and possible ratification of the Sale Contract, the Court **SUSTAINS** those issues and remands the case for further proceedings consistent with this disposition.

### C. BP Chaney's Fraud Claim

In its third issue, BP Chaney asserts that the bankruptcy court erroneously concluded that BP Chaney could not establish its fraud claim against Anarkali as a matter of law. BP Chaney's Br. at 34. The bankruptcy court concluded that "BP Chaney did not justifiably rely on any misrepresentation." BK ECF No. 114 at 18. Based on its review of the record, the Court agrees with the bankruptcy court's conclusion. As explained above, the

circumstances surrounding the closing and execution of the various documents presented numerous red flags—not least the closing attorney's warning that the agreement had "no legal teeth" and that the documents signed by BP Chaney were reduced to writing and able to be reviewed by BP Chaney—prevent BP Chaney from justifiably relying on Anarkali's representations as a matter of law.

Accordingly, the Court **OVERRULES** BP Chaney's third issue.

### D.     Limitations

In its eighth issue, BP Chaney argues that the bankruptcy court erred by concluding that BP Chaney's claims for breach of contract, specific performance, fraud, and conversion were barred by limitations.    BP Chaney's Br. at 38.    Because the Court concluded above that BP Chaney's fraud claim would still fail for lack of justifiable reliance, the Court **OVERRULES as moot** BP Chaney's eighth issue with respect to its fraud claim.

After analyzing the record, the Court agrees with the bankruptcy court that BP Chaney's conversion claim is barred by limitations because the discovery rule would not apply to that claim based on the facts pleaded by BP Chaney.  On appeal, BP Chaney makes no specific argument as to why the discovery rule should be applied to BP Chaney's conversion claim.   Therefore, the Court **OVERRULES** BP Chaney's eighth issue with respect to its conversion claim.

However, as explained above, because the Court sustained BP Chaney's second issue regarding the enforceability and validity of the Sale Contract and recognized that BP

Chaney should have been permitted to assert the discovery rule, the Court **SUSTAINS** BP Chaney's eighth issue as to breach of contract and specific performance.

### E.   Finding that the Note and Contract for Deed were Entered Into "Roughly Contemporaneously" as Part of a Single Transaction

In its ninth issue, BP Chaney challenges the bankruptcy court's finding and conclusion that the Contract for Deed and Note were entered into "roughly contemporaneously" as part of a single transaction. BP Chaney's Br. at 40; BK ECF No. 154 at 4. The Court determines that finding to be clearly erroneous as it was undisputed that the Note was executed on November 19, 2008, and the Contract for Deed was executed on December 30, 2008. Absent additional facts, these documents executed more than one month apart are not executed roughly contemporaneously.

Additionally, it was erroneous for the bankruptcy court to conclude that these documents were executed as part of a single transaction. The Contract for Deed makes no mention of the Note and instead provides specific payment terms that govern the transaction and may be enforceable separate and apart from a note. *See* BK ECF No. 93 at 116–144. The Note does state that it is secured "by a contract for deed," but there is no identification of what contract for deed is referenced. *See id.* at 128.

Therefore, because these resolutions of disputed facts were improper at the summary judgment stage, the Court **SUSTAINS** BP Chaney's ninth issue.

### F.   Anarkali's Issues Overruled as Moot

Having concluded that BP Chaney should have been permitted to assert the discovery rule and challenge the enforceability of the Sale Contract and Contract for Deed

and that the case should be remanded for trial on BP Chaney's claim for breach of contract and specific performance, as well as its requests for declaratory judgment, the Court concludes that Anarkali's five issues—all of which concern challenges to the bankruptcy court's failure to award Anarkali its attorney's fees and costs—are **OVERRULED as moot**.

## V.    CONCLUSION

Based on the foregoing, the Court **AFFIRMS in part and REVERSES in part** the bankruptcy court's Order Denying Leave to Amend and Add the Discovery Rule (BK ECF No. 115), Clarification Order (BK ECF No. 132), Order Granting Motions for Summary Judgment (BK ECF No. 114), Final Order (BK ECF No. 154), and Final Judgment (BK ECF No. 155) and **REMANDS** this case for further consistent proceedings.

BP Chaney's actual-filed First Amended Complaint (BK ECF No. 60) is the live pleading and BP Chaney's remaining live claims are on breach of contract and specific performance, and BP Chaney can raise the discovery rule in response to a limitations defense. BP Chaney's requests for declaratory judgment are also live. BP Chaney's claims for fraud, conversion, tortious interference, fraudulent transfer, and DTPA violations are dismissed.

Having overruled Anarkali's four issues regarding attorney's fees and BP Chaney's twelfth issue as moot, the Court **REMANDS** the issue of attorney's fees and costs to be determined upon final adjudication of BP Chaney's remaining claims.

**SO ORDERED** on this **25th day of October, 2019**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE